## MARLYS R. BETHKE AND OTHERS v. COUNTY OF BROWN AND OTHERS.

223 N. W. 2d 757.

October 18, 1974—No. 44569.

---

*Robert J. Berens,* County Attorney, and *R. T. Rodenberg,* Assistant County Attorney, and *Terence M. Dempsey,* City Attorney, for appellants.

*Heinen & Christian* and *W. L. Heinen,* for respondents.

Heard before Peterson, Kelly, and Todd, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

The County of Brown and city of New Ulm appeal from a decision of the trial court determining that the assessment procedures by which the real estate taxes payable in 1971 in the city of New Ulm were determined were null and void and of no effect. Respondents, by notice of review, appeal the determination of the trial court that the holding in this case was not applicable to the real estate taxes payable in 1972. We affirm.

This matter arose on petitions of 134 taxpayers in the city of New Ulm seeking to set aside the assessment of taxable valuation of their property made in the year 1970, which was the basis for real estate taxes payable in 1971. The issues relating to assessment procedures were severed and consolidated for trial. Only these proceedings are now before us.

On October 14, 1969, after making a study of property valuations within the city limits, the city council of New Ulm decided to reassess the city's residential property. Four methods of assessment were considered by the council, namely, (1) an across-the-board-percentage increase; (2) contracting with a private firm to make the reassessment; (3) contracting with the state to make the reassessment; and (4) having the city assessor perform the reassessment.

The city assessor reported at this meeting that there were approximately 6,000 parcels of taxable properties within the city limits and that his office could complete the reassessment over a 4-year period by hiring two to four additional persons. The city council decided to have the local assessor proceed with the assessment and adopted his proposal of dividing the geographical areas of the city into various segments which would be completed one at a time and placed upon the tax rolls as completed. The council was aware that such a method would result in temporary discrimination during the period of the reassessment.

The reassessment began on October 24, 1969, in the "Hilltop" area of the city. This area consisted of 600 homes and 300 vacant lots which the assessor considered to be the most inequitably assessed area in the city based on previous assessments. Originally it was contemplated that only this area would be completed in time for the 1971 tax assessment, but an additional 400 parcels were reassessed in another segment and the results were given to the board of equalization on July 15, 1970.

The city assessor had hired two people to assist in doing the measuring of homes involved. He testified that as their input was all that he could keep up with, he did not hire additional per-

sons to assist in measuring the homes. The entire assessment procedure was completed prior to January 1, 1972.

It is unchallenged that the properties reassessed paid an increased percentage of the real estate taxes for the tax year 1971. The 134 petitioners paid a composite 55.66-percent increase in taxes over the previous years. Since the mill rate varies inversely with the assessment value, other property in the city paid the same or less tax than in previous years.

The trial court found that the revaluation of residential real estate for assessment purposes for the year 1971 constituted a systematic, arbitrary, and intentional overvaluation of the properties of the petitioners in comparison to the other properties of the same class in the city and resulted in an unfair and discriminatory tax against the real estate of the petitioners contrary to the Federal and State Constitutions. In subsequent proceedings, the court further found that under Minn. St. 278.01[1] the assessment for each assessment period constitutes a proper basis for appeal and that the petition for determination of the propriety of the assessment must be filed on or before June 1 of each year in which the tax becomes payable.

■ The initial issue presented on this appeal is whether portions of property located in a taxing district may be revalued and reassessed upon the tax rolls prior to completion of the revalua-

---

[1] Minn. St. 278.01 provides: "Any person having any estate, right, title, or interest in or lien upon any parcel of land, who claims that such property has been partially, unfairly, or unequally assessed, or that such parcel has been assessed at a valuation greater than its real or actual value, or that the tax levied against the same is illegal, in whole or in part, or has been paid, or that the property is exempt from the tax so levied, may have the validity of his claim, defense, or objection determined by the district court of the county in which the tax is levied by serving copies of a petition for such determination upon the county auditor, county treasurer, and the county attorney and filing the same, with proof of such service, in the office of the clerk of the district court on or before the first day of June of the year in which such tax becomes payable."

tion and reassessment of all property located within the taxing district. We have previously held that, while counties do not constitute taxing districts, other units of government do. In re Petition of Dulton Realty, Inc. v. State, 270 Minn. 1, 132 N. W. 2d 394 (1964). We there said (270 Minn. 20, 132 N. W. 2d 407):

"* * * It is noticeable that while cities, villages, and towns are referred to as taxing or assessment districts in various statutes, nowhere is there any reference to the county as such a district."

In In re Petition of Hamm v. State, 255 Minn. 64, 70, 95 N. W. 2d 649, 654 (1959), we said:

"It follows that discrimination in the imposition of the tax burden, resulting from systematic, arbitrary, or intentional undervaluation of some property as compared to the valuation of other property in the same class, violates the uniformity clause of Minn. Const. art. 9, § 1, and the equal-protection clause of U. S. Const. Amend. XIV, even though the property so discriminated against be not assessed higher than its fair market value adopted as a uniform basis in the making of assessments."

More recently, we have again considered this matter in Johnson v. County of Ramsey, 290 Minn. 307, 187 N. W. 2d 675 (1971). There, a determination was made to revalue real property in Ramsey County. Because of the size of the county and the number of taxable parcels involved, the entire revaluation could not be completed at one time. The county assessor then made a determination to revalue certain taxing districts within the county. One of the communities involved in the revaluation was the city of White Bear Lake. Petitioner's parcel of property was located within the boundaries of that city. Similar property adjacent to either side of petitioner's property was located within the township of White Bear. Those parcels were not revalued or placed upon the tax rolls at the same time as petitioner's. In our decision we restated our position that the county did not constitute a taxing district. We said that the county must be allowed

a reasonable time to complete the revaluation of all the properties within its boundaries and that it was not unconstitutional to place upon the tax rolls all the property in an individual taxing district within the county at its reassessed value prior to the completion of the revaluation of the entire county. The appellants now propose that we extend the theory and logic of the Johnson case to permit a taxing district to place segments and portions of its property upon the tax rolls at reassessed valuations prior to the completion of the revaluation of all the property within the taxing district. We decline to extend the rule adopted in the Johnson case to individual taxing districts.

We hold that all property which is to be revalued in a separate taxing district must be placed upon the tax rolls at the new valuations at the same time.[2] It is constitutionally invalid to divide the taxing district into geographical segments and replace portions of the taxable parcels of property upon the tax rolls even though the scheme of revaluation is to be accomplished within a reasonable time. Such a result is consistent with the dictum of our decision in Johnson where we said (290 Minn. 315, 187 N. W. 2d 679):

"From a strictly technical standpoint, if we were to consider Ramsey County as a single taxing district, there might be some difficulty in justifying disparity, even temporarily, under our constitutional requirement that property of similar nature be taxed equally, * * *."

2. Since the same assessment period is involved, petitioners seek review of the trial court's holding that the ruling as to the validity of the 1971 taxes would not be extended to the 1972 taxes. The trial court correctly found that the statutory proceedings under Minn. St. 278.01 are the exclusive remedy of the taxpayer. Evanson v. Commissioner of Taxation, 280 Minn. 559, 159 N. W. 2d 259 (1968). Any challenges to the taxes due and

---

[2] Our holding neither interferes with nor limits the duties and responsibilities of boards of review under Minn. St. 274.01.

payable in 1972 must be made under the statute by filing a petition for determination of the propriety of the assessment on or before June 1 of that year. The taxes for separate taxable years cannot be determined in proceedings involving the validity of another tax year unless separate petitions are filed and the matters consolidated for hearing.

Affirmed.