STATE EX REL. CITY OF NEW PRAGUE AND ANOTHER v. COUNTY OF SCOTT AND OTHERS.[1]

July 5, 1935.

No. 30,379.

[1]Reported in 261 N. W. 863.

*Clarence O. Fehling,* City Attorney, and *Arthur J. Phil Jelinek,* for appellants (relators below).

*Harry A. Irwin,* County Attorney, for respondents.

I. M. OLSEN, JUSTICE.

Action by *mandamus* in the district court, by the city of New Prague, to compel the issuance of a warrant by the county auditor of Scott county for the payment to the treasurer of said city of a sum of money claimed to be in the treasury of said county and to belong and be payable to said city. An alternative writ was issued. Answer was interposed and the case tried. The trial court made findings of fact and conclusions of law directing judgment discharging the alternative writ and adjudging that the relators are not entitled to any peremptory writ. Judgment was thereupon entered dismissing the alternative writ and denying the application for a peremptory writ. The relators appeal from the judgment.

There is no material dispute as to the facts. For convenience we refer to the petitioner city of New Prague as the city and to the respondent county of Scott as the county, except where otherwise stated. New Prague is a city of the fourth class, located partly in Scott county and partly in Le Sueur county, in this state. For the years 1913 to 1931, both inclusive, the county duly levied a county road and bridge tax for use in building and maintaining county roads and bridges. This tax is a property tax upon all taxable real and personal property assessed in all cities, villages, and townships in the county, including that part of the city located in said county. For the years 1913 to 1931, inclusive, the county collected, under its said levies for county road and bridge purposes on property assessed therefor in that part of the city in Scott county, the sum of $34,731.91. This amount, less about $3,800, expended by the county for bridge and street purposes within the city

and some items of refundments, the city seeks to compel the county now to pay over to it. The claim of the city is made under L. 1913, c. 183, as amended, now 1 Mason Minn. St. 1927, §§ 1774-1776.

The county raises the question of the constitutionality of the statute. A brief consideration of the statute and its effect on taxation may be helpful. L. 1925, c. 300, amending the statute, provides as follows:

"Section 1. **Roads, bridges, etc., in cities in two or more counties.**—That Section 1774 is hereby amended so as to read as follows:

" 'Section 1774. In all cities of the fourth class situated in two or more counties the common council or other governing body shall have exclusive power to expend all moneys arising from taxation for roads, bridges and streets upon the real and personal property within the corporate limits of such cities, *except as herein provided.*'

"Sec. 2. **Taxes.**—That Section 1775 of the General Statutes 1923, be and hereby is amended so as to read as follows:

" 'Section 1775. Such tax shall be levied and collected as other taxes are levied and collected, and when collected such taxes except the State Road and Bridge tax shall be paid by the respective counties into the treasury of such city, *except that in all cases where any such county or counties shall have heretofore constructed or shall hereafter construct a bridge across any stream or river connecting parts of any such city, then the road and bridge fund in such county or counties shall in such case be paid into the county treasury and disbursed by the county board as in the case of other roads or bridges constructed by such county.*'

"Sec. 3. **Expenditures.**—That Section 1776 of the General Statutes of 1923 be and is hereby amended so as to read as follows:

" 'Section 1776. *Except as provided in Section 2 of this Act,* the governing body of any such city shall have the control of all expenditures for roads, streets and bridges, within such city, and may at its pleasure expend moneys from the city road and bridge fund for building and repairing roads and bridges outside of its corporate limits.' "

If the act is construed as contended by the city, it means that road and bridge taxes levied and collected by the county for county road and bridge purposes, on property in the part of the city located in the county, must be diverted from the county road and bridge fund and paid over to the city for use on its streets or for such road or bridge purposes as the city sees fit, under its authority to expend money on roads outside of the city. The city could, under that act, use all road taxes on property in one county on streets and roads in the other county, thereby diverting the taxes from the county in which levied and collected. The city, like all cities and villages, has authority to levy taxes for street, road, and bridge purposes, and to expend the money collected on streets within the city and on adjacent roads. It is the duty of the city to maintain its streets with its own funds, levied by its proper board, with such aid as it may receive from the state and county. By this statute, as construed for the city, there is taken from the county and donated to the city part of the money raised by taxes levied by the county for county purposes. It is not claimed that any of the taxes here sought to be recovered were levied by the city for city purposes. If paid over to the city, the city will be relieved from itself levying some $30,000 for city road and bridge purposes. The effect of the statute, if construed as asked, is to relieve the city from paying any county road and bridge taxes. To hold that the county shall levy and collect a road and bridge tax for county purposes and then immediately pay it over to the city is the same as holding that the city shall not pay any county road and bridge tax. The statute attempts indirectly to do what the legislature could not do directly by a law relieving a part of the property assessed for taxation in Scott county from the payment of taxes levied for county purposes, while all other cities and villages in the county are required to pay such taxes.

1 Mason Minn. St. 1927, § 2057, provides that county taxes shall be levied in July each year by the county board, and "shall be based upon an itemized statement of the county expenses for the ensuing year, * * * and no greater levy of county taxes shall be made upon the taxable property of any county than will be equal

to the amount of such expenses, with an excess of five per cent of the same." The county board, as far as we know, has no authority to levy county taxes, or any taxes, for city or village purposes. The practical difficulties that would result from the county board's levying taxes for city purposes under this statute are apparent. The county board, having determined the amount of the county expense for road and bridge purposes for the ensuing year, would then have to levy an additional sum to cover the amount of such taxes which would have to be turned over to the city. This it could not do without exceeding the limit authorized by the statute. Again, if it did make such a levy, the city could then come in and demand that out of such additional levy it would be entitled to receive that part thereof coming from property assessed within the city, resulting in a further deficiency in its road and bridge fund for county purposes.

Art. 9, § 1, of the state constitution, provides: "Taxes shall be uniform upon the same class of subjects." The subject of the tax here in question is the real and personal property assessed for taxation in the county. A law which exempts or relieves property or persons in one part of the county from the burden of county road and bridge taxes, while all other property and persons in the county remain subject to such taxes, no reasonable grounds for any such distinction appearing, is arbitrary and fanciful. It violates the constitutional requirement of uniformity. Classification of subjects for taxation must be based on differences which furnish reasonable grounds for making a distinction between different classes or localities. The rule of uniformity requires that all similarly situated shall be treated alike. State v. Minnesota Farmers Mut. Ins. Co. 145 Minn. 231, 176 N. W. 756. There must be substantial distinction, having reference to the subject matter of the legislation, between the objects or places embraced in the law and the objects or places excluded. 1 Dunnell, Minn. Dig. (2 ed.) pp. 959-961, and cases cited in note 18, p. 960. There is no reason or justification for requiring property immediately adjacent to New Prague in Scott county to bear the burden of a county road and bridge tax and property in the city itself to be relieved of that burden. Neither

is there any reason or justification for requiring property in the several other cities, villages, and towns of the county to be taxed for county road and bridge purposes and the property in New Prague in said county to be relieved therefrom. Real and personal property are the same classes of property whether located in New Prague or in any other city, village, or township of Scott county.

It is argued that the taxpayers of the city paid their share of the county road and bridge taxes to the county, and taxpayers in other cities, villages, and towns did the same. So it is said that paying this money over to the city will result in no gain to the taxpayers of the city and no loss to the taxpayers of other cities, villages, and towns in the county. There is no foundation for such a claim. If this money is paid over to the city, it will relieve the taxpayers of the city from raising by taxation that amount of money for street, road, and bridge purposes in the city. They will be benefited to that extent. On the other hand, the taxpayers of all other parts of the county will have to pay additional road and bridge taxes to the extent of the money so paid over to the city in order to raise the money required to make the county road and bridge fund sufficient to cover the county expense for road and bridge purposes. These taxpayers will lose to the extent of the money so paid to the city. It may be said that the county will suffer a direct loss and the city reap a direct benefit to the extent of the amount of tax money so paid to the city. Again, roads and bridges constructed, improved, and maintained by the county by its road and bridge fund are for the benefit of cities, villages, and towns in the county. That New Prague has received full benefit from the county road tax is shown by the fact that the county, during the years in question, expended over $200,000 of its road funds upon highways within what is testified to as the trade territory of the city and within not to exceed eight miles from the city limits, several such roads leading directly into the city and being improved and maintained by the county up to the city limits. If the city then is entitled to receive back from the county all county road taxes levied, it receives a double benefit from such taxes.

In State ex rel. City of Hastings v. Dakota County, 142 Minn. 223, 171 N. W. 801, L. 1913, c. 183, was held not to violate art. 4, § 33, of the state constitution, prohibiting the enactment of special laws where a general law can be made applicable. The opinion in that case does not mention art. 9, § 1, of the constitution, and apparently the question we have here considered was not raised or decided in that case.

It is held in many cases that where there is a classification as to territorial divisions or as to the business, profession, or industry treated of in the law, and such classification is based on proper distinctions, and the law applies equally to all within the class, then there is no class legislation and the law is general in application and valid. But art. 9, § 1, of the constitution, requires taxes to be uniform upon the same class of subjects, that is, upon the same classes of property or rights, within the territorial limits of the taxing authority. Even as to laws not related to taxation, a law cannot, by classification based on territorial divisions or other grounds, discriminate between persons within the class and persons outside the class who are in the same situation or condition. As said in Johnson v. St. P. & D. R. Co. 43 Minn. 222, 224, 45 N. W. 156, 157, 8 L. R. A. 419, opinion by Justice Mitchell:

"It has been sometimes loosely stated that special legislation is not class, 'if all persons brought under its influence are treated alike under the same conditions.' But this is only half the truth. Not only must it treat alike, under the same conditions, all who are brought 'within its influence,' but in its classification it must bring within its influence all who are under the same conditions."

In State v. Luscher 157 Minn. 192, 194, 195 N. W. 914, 915, the court said:

"While a statute may be limited in its operation to a specified class, to be valid it must apply alike to all who are within that class and must not exclude from its operation any who are under the same conditions and in the same situation as those to whom it applies."

Road and bridge taxes on real and personal property are levied by three separate taxing authorities. Each levies the tax upon the

property assessed within the territorial limits over which it exercises taxing authority. The state levies the tax throughout the state; the county levies the tax throughout the county; and cities, villages, and towns levy the tax upon the assessed value of real and personal property within the city, village, or town. As a general rule each taxpayer pays three road taxes, one to the state, one to the county, and one to the local municipality or *quasi* municipality wherein his property is assessed. This is a uniform system and results in uniform taxes within each local taxing unit. If the state or county levies a tax on property assessed in some of the taxing units within its territory but exempts one or more other such taxing units, the uniformity required by the constitution disappears.

We follow the well-settled rule that the courts will not declare a law unconstitutional unless it clearly appears that the law violates one or more provisions of the constitution. It is sometimes said that it must appear beyond a reasonable doubt that the law violates constitutional provisions before it can be declared invalid. That this law violates the constitutional provision as to uniformity of taxation and is invalid clearly appears and admits of no reasonable doubt.

A number of other questions are raised by the appeal. As the question we have decided is decisive of the appeal, we do not now need to extend this opinion by considering them.

We agree with the trial court that L. 1913, c. 183, as amended by L. 1925, c. 300, is unconstitutional and invalid.

The judgment appealed from is affirmed.